IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REDHORSE CORPORATION
1370 India Street, Suite 200
San Diego, California 92101

Plaintiff

v.

U.S. SMALL BUSINESS ADMINISTRATION
409 Third Street, Southwest
Washington, D.C. 20416

Serve: U.S. Small Business Administration
409 Third Street, Southwest
Washington, D.C. 20416

and

Clerk, U.S. Attorney's Office
501 Third Street, Northwest
Washington, D.C. 20530

and

U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., Northwest
Washington, D.C. 20530

Defendant

Case No. 1:17-cv-01091

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, A TEMPORARY RESTRAINING ORDER, AND INJUNCTIVE RELIEF**

Plaintiff, **REDHORSE CORPORATION**, in the above-entitled action, by and through its undersigned counsel, hereby demands Judgment against Defendant, **U.S. SMALL BUSINESS ADMINISTRATION**, as set forth below, and as its Complaint for Declaratory Judgment, a Temporary Restraining Order, and Injunctive Relief, states as follows:

## I. INTRODUCTORY STATEMENT

1. This case represents an equitable action against a United States Federal Government agency whereby Plaintiff, Redhorse Corporation ("Redhorse"), seeks a Declaratory Judgment, a Temporary Restraining Order, and Preliminary and Permanent Injunctive Relief, to enjoin Defendant, U.S. Small Business Administration ("SBA"), from ruling on its own protest of Redhorse's status as a Service-Disabled Veteran-Owned Small Business ("SDVOSB"). The SBA's protest is based on the control requirements for the SBA's SDVOSB program. The SBA, after a lengthy and detailed review, previously approved Redhorse's corporate control structure in certifying Redhorse into its 8(a) Business Development Program ("8(a) Program"). Despite the fact that the two programs are based on virtually identical control requirements, the SBA is now seeking to ignore and undermine its previous finding of control.

2. The SBA's self-initiated status protest follows an independent, quasi-judicial determination by the SBA's Office of Hearings & Appeals ("OHA"), dismissing a disappointed bidder's untimely protest of Redhorse's SDVOSB status, which protest asserted the same arguments the SBA makes now. In doing so, OHA's decision overturned a determination issued by the same SBA office that now protests Redhorse's disadvantaged status.

3. Although the SBA, the mission of which is to aid, counsel and assist small businesses, had the opportunity to adopt the disappointed bidder's protest as its own at the time the protest was filed, it declined to do so. Instead, the SBA filed its SDVOSB control protest only after OHA overturned the SBA's decision. SBA irrationally chose to protest Redhorse's General Service Administration ("GSA") Federal Supply Schedule ("FSS"), Contract for Professional Services, No. GS-00F-0013Y ("Schedule Contract"), through which Redhorse has successfully bid several dozen task orders. However, Redhorse's Schedule Contract is not an

SDVO contract under SBA regulations, and, therefore, SBA is without any regulatory authority to conduct an SDVOSB status protest with respect to Redhorse's Schedule Contract. The SBA's conduct in this regard abuses its authority to protest procurement contracts, is contrary to law and regulation, and mires Redhorse in ongoing legal uncertainly about the status of its many federal contracts.

4. Redhorse reasonably relied on the SBA's original 8(a) Program certification in December 2011, which was issued only after a detailed eight (8) month investigation process conducted by the SBA, and annual reviews thereafter, to conclude that Redhorse satisfied the program's control requirements. During all times relevant to the SBA's new SDVOSB protest, Redhorse's corporate control structure has not changed materially. Rather than counsel Redhorse on how to cure any alleged or perceived defect in Redhorse's corporate control structure, the SBA now, more than five (5) years later, singles Redhorse out as an adversary and seeks to strip Redhorse of its SDVOSB status.

5. Redhorse did not misrepresent or conceal any information during the 8(a) Program application process, and the SBA does not contend that it did. Accordingly, the SBA's protest is an unjustified second-guessing of its own prior conclusion without any explanation for the reversal of its prior decision.

6. The implementation of inconsistent, random, and arbitrary decisions by the SBA, seemingly based on the unsubstantiated opinions of SBA officials, is arbitrary, capricious, an abuse of discretion, and contrary to law, and has deprived Redhorse of access to a fair and equitable agency process. The SBA had abdicated its role as counselor and advisor to small businesses and should be enjoined from proceeding with its protest.

## II. PARTIES, JURISDICTION, AND VENUE

7. Plaintiff, **REDHORSE CORPORATION** (“Plaintiff” or “Redhorse”), is a Delaware corporation, organized and operated under the laws of the State of Delaware, and has a principal place of business at 1370 India Street, Suite 200, San Diego, California 92101.

8. On information and belief, Defendant, **U.S. SMALL BUSINESS ADMINISTRATION** (“Defendant” or “SBA”), is an agency of the United States Government, organized and operated under the laws and regulations of the United States of America in place from time to time, and has its primary office at 409 Third Street, Southwest, Washington, District of Columbia 20416. The SBA is responsible for the lawful administration of the Small Business Act, 15 U.S.C. §§ 631 – 657s (1958 & Supp. 2015), in order to aid, counsel, assist and protect the interests of small businesses. SBA administers both the SDVOSB and 8(a) Business Development Programs.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (1980), because it is raised under the United States Constitution and/or the laws and/or treaties of the United States, those laws being, in this case, the Administrative Procedures Act, 5 U.S.C. §§ 701 – 706 (1994), and the Small Business Act, 15 U.S.C. §§ 631 – 657s (1958 & Supp. 2015), including its implementing regulations, and any other relevant and applicable statutes.

10. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1346 (2013), because this dispute involves the United States, and/or a federal agency thereof, as the Defendant-party.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) (2011), because Defendant, which is an agency of the United States, resides in this district.

## III. FACTUAL BACKGROUND

***The SBA and Its 8(a) and SDVOSB Programs***

12. The SBA is a Federal Government agency, the purpose of which is to "aid[ ], counsel[ ], assist[ ], and protect[ ] the interests of small business concerns, and advocate[ ] on their behalf within the Government." 13 C.F.R. § 101.100 (1983). In fact, "[i]t is the declared policy of the Congress that the Federal Government, through the Administrator of the Small Business Administration, acting in cooperation with the Department of Commerce and other relevant State and Federal agencies, should aid and assist small businesses, as defined under [the Small Business Act], to increase their ability to compete in international markets . . . ." 15 U.S.C. § 631(b) (2010).

13. In order to assist certain types of small businesses to compete in the marketplace and pursuant to the Small Business Act, 15 U.S.C. §§ 631 – 657s (1958 & Supp. 2015), the SBA created the 8(a) Program, a Federal Government business assistance program which offers support in the development and growth of small businesses owned and operated by individuals who are socially and economically disadvantaged.

14. Participants in the 8(a) Program are offered a broad scope of assistance, including sole-source contracts and opportunities to participate in joint ventures, that help small businesses gain a foothold in government contracting.

15. Small businesses wishing to be a part of the 8(a) Program go through a detailed application process administered and regulated by the SBA.

16. As part of its evaluation of applicants to the 8(a) Program, the SBA conducts a detailed review and analysis of several eligibility requirements, which are set forth in 13 C.F.R. §§ 124.101 through 124.112 (2016) and which are summarized on the SBA's website, located at:

https://www.sba.gov/contracting/government-contracting-programs/8a-business-development-program/eligibility-requirements (last visited June 6, 2017).

17. In particular, SBA imposes an obligation that socially and economically disadvantaged individual(s) must "unconditionally own[ ] and control[ ]" small business applicants of, and participants in, the 8(a) Program. 13 C.F.R. § 124.101 (2016).

18. For purposes of ownership, under the applicable regulations, "[a]n applicant or Participant" in the 8(a) Program "must be at least 51 percent unconditionally and directly owned by one or more socially and economically disadvantaged individuals . . . ." 13 C.F.R. § 124.105 (2016).

19. The SBA considers "control" to include "both the strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations." 13 C.F.R. § 124.106 (2016). The "management and daily business operations must be conducted by one or more disadvantaged individuals" who hold "managerial experience of the extent and complexity needed to run" any small business applicant to or participant in the 8(a) Program. The small business must be "managed on a full-time basis" by the disadvantaged individual(s); the disadvantaged individual(s) must hold the business' highest officer position; the disadvantaged individual(s) who manage(s) the small business "must devote full-time to the business during the normal working hours of firms in the same of similar line of business"; in the case of a corporation, the disadvantaged individual(s) must "control the Board of Directors," i.e., "[a] single disadvantaged individual [must] own[ ] at least 51% of all voting stock . . ., the individual is on the Board of Directors[,] and no super majority voting requirements exist for shareholders to approve corporate actions." Non-disadvantaged individuals may not "[e]xercise actual control or have the power to control" the small business. 13 C.F.R. § 124.106 (2016).

20. Only the SBA can determine whether a concern satisfies the ownership and control requirements of 13 C.F.R. §§ 124.105 and 124.106 (2016). Accordingly, 8(a) concerns must rely on the SBA's knowledge and understanding of the SBA regulations in certifying concerns for the 8(a) Program.

21. In order for a concern to remain eligible for 8(a) Program participation, it must continue to meet 8(a) eligibility criteria each year.

22. Also pursuant to the Small Business Act, the U.S. Government sets aside certain contracts for companies that are SDVOSB concerns ("the SDVOSB Program"). *See* 15 U.S.C. § 657f (2003). The SDVOSB Program is also administered through the SBA.

23. To be an SDVOSB, a small business must meet certain requirements. Similar to the requirements of the 8(a) Program as applied to disadvantaged individuals, an SDVOSB must be majority owned and controlled by a "service-disabled veteran," as that term is defined by 38 U.S.C. §§ 101(2) and (16) (2008). The SBA's requirements for acceptance as an SDVOSB are set forth in 13 C.F.R. §§ 125.12 – 125.16 (2016).

24. The ownership and control requirements to represent as an SDVOSB are substantially similar – in fact, almost identical – to the requirements for acceptance into the 8(a) Program. *Compare* 13 C.F.R. §§ 125.12 – 125.16 (2016) (SDVOSB Program requirements) *with* 13 C.F.R. §§ 124.101 – 124.112 (2016) (8(a) Program requirements).

25. See the following Table 1 for a description of the similarities between SDVOSB and 8(a) Program "control" requirements:

**Table 1. SBA "Control" requirements: 8(a) vs. SDVOSB**
**Particularly similar and/or identical language has been bolded*

| | **8(a) Program Requirements** (13 C.F.R. § 124.106 (2016) | **SDVOSB Requirements** (13 C.F.R. § 125.13(2016)) |
|---|---|---|
| **Management and daily business operations** | **management and daily business operations must be conducted by one or more disadvantaged individuals.**<br><br>13 C.F.R. § 124.106 | **management and daily business operations**…**must be controlled by one or more [service-disabled veterans]**.<br><br>13 C.F.R. § 125.13(a) |
| **Long-term decisions and day-to-day management** | both the **strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations…**<br><br>13 C.F.R. § 124.106 | both the **long-term decisions making**<br><br>**and the day-to-day management and administration of the business operations**...<br><br>13 C.F.R. § 125.13(a) |
| **Management capabilities** | possess **requisite management capabilities**.<br><br>13 C.F.R. § 124.106(a)(1) | must have **managerial experience of the extent and complexity needed to run the concern**.<br><br>13 C.F.R. § 125.13(b) |
| **Highest officer position** | **must hold the highest officer position (usually President or Chief Executive Officer) in the applicant or Participant** ….<br><br>13 C.F.R. § 124.106(a)(2) | **must hold the highest officer position in the concern (usually President or Chief Executive Officer)**.<br><br>13 C.F.R. § 125.13(b) |
| **Corporations** | **One or more disadvantaged individuals must control the Board of Directors of a [concern].**<br><br>**(1) SBA will deem disadvantaged individuals to control the Board of Directors where:**…<br><br>(ii) A single disadvantaged individual **owns at least 51% of all voting stock of [a concern]**, the individual is **on the Board of Directors** ….Where super majority voting requirements are provided for in the concern's articles of incorporation, its by-laws, or by state law, the disadvantaged individual must own at least the **percent of the voting stock needed to overcome any such super majority voting requirements**; or… | **One or more [service-disabled veterans] must control the Board of Directors of the concern**.<br><br>**Service-disabled veterans are considered to control the Board of Directors when either:**<br><br>(1) One or more service-disabled veterans **own at least 51% of all voting stock of the concern**, are **on the Board of Directors** and have the **percentage of voting stock necessary to overcome any super majority voting requirements**; or |

| | | |
|---|---|---|
| **Corporations, cont'd** | (2) Where an applicant or Participant does not meet the requirements set forth in paragraph (d)(1) of this section, the disadvantaged individual(s) upon whom eligibility is based must **control the Board of Directors through actual numbers of voting directors or, where permitted by state law, through weighted voting** …<br><br>13 C.F.R. § 124.106(d) | (2) Service-disabled veterans comprise the **majority of voting directors through actual numbers or, where permitted by state law, through weighted voting.**<br><br>13 C.F.R. § 125.13(e) |

(Emphasis added).

26. For the purposes of "ownership," under the applicable regulations, an SDVOSB must be "at least 51% unconditionally and directly owned by one or more service-disabled veterans." 13 C.F.R. § 125.12 (2016).

27. The SBA considers "control," in terms of the SDVOSB Program, to require that "the management and daily business operations of the [small business] must be controlled by one or more service-disabled veterans . . . [,]" meaning that "both the long-term decisions making and the day-to-day management and administration of the business operations must be conducted by one or more service-disabled veterans . . . ." 13 C.F.R. § 125.13(a) (2016). A service-disabled veteran must hold the business' highest officer position and must have "managerial experience of the extent and complexity needed to run" the small business concern. In the case of a corporation, the service-disabled veteran must "control the Board of Directors," i.e., he, she, or they "own at least 51% of all voting stock . . ., are on the Board of Directors and have the percentage of voting stock necessary to overcome any super majority voting requirements; or . . . [s]ervice-disabled veterans comprise the majority of voting directors through actual numbers or, where permitted by state law, through weighted voting." 13 C.F.R. § 125.13 (2016).

### ***Redhorse's Corporate Ownership and Control Structure***

28. Redhorse is a management and technology consulting company based in San Diego, California. Redhorse serves numerous government clients, assisting them in planning, managing, and executing mission critical operations, delivering value-added solutions, enhancing security and meeting program and compliance requirements.

29. Redhorse is majority-owned and -controlled by David Inmon ("Inmon"), who has served as Redhorse's President and Chief Executive Officer, Redhorse's highest officer position, since 2008, when Redhorse was established.

30. Inmon owns fifty-one percent (51%) of the Redhorse voting stock and is the Chairman of its Board of Directors.

31. At all times relevant hereto, Inmon has exercised control over Redhorse, and there has never been an instance where Inmon's vote or decision on Redhorse's Board of Directors failed to control Redhorse's conduct, policies, or procedures.

32. Inmon is a service-disabled veteran, as that term is defined by 38 U.S.C. §§ 101(2) and (16), because he "served in the active military, naval, or air service, and . . . was discharged or released therefrom under conditions other than dishonorable" and "incurred or aggravated" a "disability" while "in line of duty" in such "active military, naval, or air service."

33. Inmon is also a socially and economically disadvantaged individual, as that term is defined by 15 U.S.C. § 637 and 13 C.F.R. §§ 124.103 – 124.104 (2016), because he is a member of the Choctaw Nation of Oklahoma, and meets the economic disadvantaged criteria.

### ***Redhorse's Acceptance Into the SBA's 8(a) Business Development Program***

34. On or about April 25, 2011, Redhorse submitted an application for admission into the SBA's 8(a) Program.

35. As part of its evaluation of Redhorse's 8(a) application, the SBA reviewed, among other things, Redhorse's Stockholders' Agreement, dated August 22, 2008, and considered Inmon's management and control over Redhorse's day-to-day operations.

36. On or about May 18, 2011, the SBA responded to Redhorse's application and requested additional information and documentation to ensure that Redhorse complied with all of the 8(a) Program's qualification requirements.

37. Redhorse complied with the request and submitted additional documentation, including a detailed response to each information request and evidentiary documentation to support each claim, on or about June 1, 2011.

38. After its lengthy and thorough review, on or about December 20, 2011, the SBA, through its Office of Business Development, approved and certified Redhorse as a participant in the 8(a) Program, having determined that Redhorse met all of the 8(a) Program's eligibility requirements, including that Inmon's level of ownership and control over Redhorse satisfied adequately the ownership and control requirements set forth in 13 C.F.R. §§ 124.105 – 124.106 (2016).

39. Thereafter, Redhorse, in reliance on the SBA's determination that it qualified for and had been accepted into the SBA's 8(a) Program, reasonably concluded that it satisfied the 8(a) Program's ownership and control requirements.

40. After April 25, 2011, when it submitted its 8(a) Program application, and during all relevant times, Redhorse did not materially modify its corporate documents or change its corporate control structure.

41. Following the SBA's initial certification, Redhorse has participated in annual reviews by the SBA, as required by the 8(a) Program.

42. Following the SBA's approval and acceptance of Redhorse into the 8(a) Program, the SBA never informed Redhorse that there were any problems or deficiencies with Inmon's control over Redhorse or that Inmon's level of control over Redhorse was or could be considered less than fully compliant with the 8(a) Program requirements.

***Redhorse's Representation as a Service-Disabled Veteran-Owned Small Business Concern***

43. After SBA approved Redhorse's 8(a) Program application, Redhorse self-represented as an SDVOSB in the System For Award Management ("SAM") database, the primary supplier database for the Federal government for procurement of government contracts, in order to bid on SDVOSB set-aside procurements since SBA had approved Inmon's ownership and control over Redhorse and Inmon is a service-disabled veteran, as defined by 38 U.S.C. §§ 101(2) and (16) (2008).

44. On or about December 31, 2011, the General Services Administration ("GSA") awarded Redhorse FSS Contract No. GS-00F-0013Y. When it was awarded Contract No. GS-00F-0013Y, Redhorse was asked whether its representations and certifications in the SAM database were correct ("SAM Verification"). Redhorse responded affirmatively, thereby representing itself as an SDVOSB, in reliance on the SBA's December 2011 decision admitting Redhorse into the 8(a) Program.

45. Although Redhorse represented that it was an SDVOSB, Contract No. GS-00F-0013Y was not a procurement set aside for SDVOSBs and as such, was not an SDVO contract within the meaning of SBA regulations. *See* 13 C.F.R. § 125.17 (2016). The contract did not contain an unambiguous statement indicating that award was restricted to SDVOSBs, nor did the solicitation contain any unambiguous statement that there was a reserve for awards to SDVOSBs.

46. The original award had three five-year option periods, and Redhorse could elect to re-represent its SDVOSB status through its SAM Verification. Redhorse did so on or about December 13, 2014.

47. On or about October 1, 2015, Contract No. GS-00F-0013Y was changed to the Professional Services Schedule, which consolidated multiple Federal Supply Schedule contracts; however, it retained the same contract number (No. GS-00F-0013Y) and incorporated Redhorse's December 13, 2014 SAM Verification related to SDVOSB status.

48. Throughout each of these contracts, Redhorse performed well and exceeded agency expectations. A total of 20 SDVOSB set-aside task orders have been awarded to Redhorse under its Federal Supply Schedule contracts. Of these task orders, thirteen (13) are currently active.

***The June 13, 2016 SDVOSB Procurement***

49. On or about June 13, 2016, the GSA issued Request For Quotation No. QTA0016ACB3007 ("the RFQ"), to SDVOSB vendors, including Redhorse, holding the GSA Professional Services Schedule ("GSA Schedule") contracts under the Acquisition Management Support and information technology professional services categories.

50. The RFQ required contractors to supply management and information technology support services in order to provide transition ordering assistance to the GSA's Office of Network Services Program and its federal agency customers.

51. The RFQ was issued as an SDVOSB set-aside and was assigned NAICS Code 541611 (Administrative Management and General Management Consulting Services) with a corresponding $15 million annual receipts size standard.

52. On or about July 5, 2016, Redhorse submitted a proposal to be awarded the RFQ. As the RFQ did not require offerors to re-represent either their size or SDVOSB status, Redhorse was able to rely upon its size and SDVOSB status representations made on Schedule Contract No. GS-00F-0013Y.

53. GSA received proposals from three (3) GSA Schedule vendors by the RFQ's July 5, 2016 deadline, including Redhorse. All bidders were evaluated based on technical capability and price evaluation criteria.

54. The RFQ's Contracting Officer ("CO") determined that Redhorse offered the best value to the government, and on or about September 29, 2016, the agency issued the task order to Redhorse for $92,961,454.

***A Disappointed Bidder's Protest and the SBA's Determination***

55. On or about October 5, 2016, a disappointed bidder filed an SDVOSB protest with the SBA ("the SDVOSB Protest"). The disappointed bidder also filed a bid protest with the Government Accountability Office, which was denied on or about December 23, 2016, and a size protest with the SBA, which was dismissed on or about October 25, 2016. The SDVOSB Protest alleged that Redhorse was not owned and controlled by a service-disabled veteran because, the disappointed bidder claimed, Inmon did not have adequate control over Redhorse's day-to-day management. The disappointed bidder's sole basis for this assertion was a sentence that appeared on Redhorse's website.

56. Upon receipt of the status protest, the SBA chose neither to adopt the SDVOSB Protest, nor to file a contemporaneous protest of its own, as permitted by the regulations, but rather, it began the process of evaluating the disappointed offeror's protest.

57. On or about November 14, 2016, Redhorse submitted its timely response to the SDVOSB Protest, explaining that it qualified as an SDVOSB for the procurement. Redhorse also submitted numerous corporate documents in support of its position.

58. Redhorse submitted an additional response on or about December 15, 2016, explaining that: the SBA reviewed and certified Redhorse to participate in the 8(a) Program on December 20, 2011; since its certification in the 8(a) Program, Redhorse had participated in annual reviews; after the SBA's approval and acceptance of Redhorse into the 8(a) Program, SBA never informed Redhorse that there were or could be any problems with Inmon's level of ownership or control over Redhorse; and the SBA did not inform Redhorse of any ownership or control issues during any of its annual reviews.

59. In the SDVOSB Protest process, the SBA reviewed the exact same documents, corporate ownership and control structure, and circumstances that it had previously reviewed and approved when it evaluated Redhorse's 8(a) Program application.

60. On or about January 5, 2017, the Director of the Office of Government Contracting ("the D/GC") to the SBA issued a Determination on the SDVOSB Protest. Despite the SBA's prior conclusion that Redhorse met the virtually-identical corporate ownership and control requirements of the 8(a) Program with Inmon at the helm, the D/GC sustained the SDVOSB protest and issued a Determination that Redhorse did not meet the requirements of 13 C.F.R. § 125.13 (2016) for control by a service-disabled veteran at the time Redhorse submitted its proposal for the RFQ. In so doing, the SBA (acting through the D/GC) tacitly reversed its prior conclusion that Inmon adequately controlled Redhorse's Board of Directors and its day-to-day business operations.

61. On or about January 20, 2017, Redhorse appealed the SBA's inconsistent Determination to the SBA's Office of Hearings & Appeals ("OHA"), arguing, among other things, that the SBA was equitably estopped from reversing its own decision after Redhorse had relied on it for over five (5) years.

62. On or about March 21, 2017, OHA granted Redhorse's appeal and issued a final decision vacating the SBA's (acting through the D/GC) Determination on the grounds that the SDVOSB protest was untimely, because the protest was not filed within five (5) days. Under the SBA's regulations, status eligibility was determined as of December 13, 2014, as the CO had not requested that bidders re-represent their SDVOSB status for the task order, therefore the disappointed bidder's protest was due within five (5) days of that date.

63. Given this resolution of the status protest, Redhorse resumed work on March 22, 2017 after the GSA lifted a Stop Work Order that had been issued on October 12, 2016.

***SBA's Selective Targeting of Redhorse Without Regulatory Authority and Its Second Bite at the Apple***

64. Despite declining previously to adopt the disappointed bidder's SDVOSB status protest of a task order issued under Redhorse's Schedule Contract No. GS-00F-0013Y, on or about May 3, 2017, the SBA, through the D/GC's office, initiated its own protest challenging Redhorse's eligibility as an SDVOSB in connection with Schedule Contract No. GS-00F-0013Y ("the SBA Protest"). This protest challenged not the task order, but the entire Schedule Contract.

65. The SBA based its protest on Redhorse's December 13, 2014 representation of its status as an SDVOSB, made through its SAM Vertification, which Redhorse made when GSA exercised the option to extend Schedule Contract No. GS-00F-0013Y.

66. However, in doing so, the SBA Protest challenges Redhorse's award of its Schedule Contract, which was not set aside for SDVOSBs or otherwise an SDVO contract within the meaning of applicable SBA regulations.

67. SBA regulations state that SDVO contracts are contracts awarded to SDVOSBs through the following procurement methods: (i) sole source awards, (ii) set-aside awards based on competitions restricted to SDVOSBs, (iii) awards based upon a reserve to SDVOSBs in a solicitation for a multiple award contract or (iv) orders set aside for SDVOSBs against a multiple award contract, which had been awarded in full and open competition. 13 C.F.R. § 125.17 (2016).

68. SBA regulations also require that, in referring a status protest to the SBA, the contracting officer must identify whether the procurement was sole source or set aside, 13 C.F.R. § 125.28(e) (2016). This demonstrated that SBA regulations do not contemplate that a contract which was not set aside for SDVOSBs or a sole source award to an SDVOSB will be subject to a status protest. Any company, whether SDVOSB or not, is eligible to receive the Schedule Contract as it is an unrestricted contract.

69. SBA regulations do not authorize a party, including the SBA, to protest a procurement award of a contract that does not qualify as an SDOVB contract. Redhorse's Schedule Contract is not a sole source award, an SDVOSB set aside, or an award based on a reserve to SDVOSBs, and it is not an order set aside for SDVOSBs. Because the Schedule Contract bid on by Redhorse was not an SDVOSB contract, the SBA acted wholly outside of its regulatory authority when it protested Redhorse's status.

70. Moreover, on January 5, 2017, the D/GC found Redhorse to be ineligible as an SDVOSB. That decision was reversed summarily by OHA. Now, that very same D/GC is the

person in charge of filing the pending SBA status protest and is also the decision-maker again on the protest he filed, creating a conflict of interest and preventing Redhorse from obtaining a fair and impartial review of its SDVOSB status.

71. Despite the Congressional mandate expressed in the Small Business Act, the SBA never attempted to counsel, advise, or support Redhorse in order to help it correct or clarify any perceived flaw in its corporate ownership and control structure. Instead, the D/GC and the SBA targeted Redhorse for a penalty despite the SBA's prior approval of Redhorse's corporate control structure.

72. The SBA's action in this regard defies its regulatory obligation to "aid[ ], counsel[ ], assist[ ], and protect[ ] the interests of small business concerns, and advocate[ ] on their behalf within the Government," 13 C.F.R. § 101.100 (1983).

73. The SBA Protest is currently pending. Redhorse's response is due on or about June 16, 2017, based on a 30-day extension granted by the SBA on May 10, 2017.

74. Upon issuing a determination, SBA would be required to notify the relevant procurement's CO of its determination. 13 C.F.R. § 125.30(f) (2016). The contracting officer must update the Federal Procurement Data System and other procurement reporting databases to reflect the final agency decision. 13 C.F.R. § 125.30(g)(3) (2016). A concern found an ineligible SDVOSB, regardless of whether it appeals the SBA's decision to OHA, may not submit an offer as an SDVOSB concern on a future procurement unless "it demonstrates to SBA's satisfaction that it has overcome the reasons for the protest (e.g., it changes its ownership to satisfy the definition of an SDVO [Small Business Concern]) and SBA issues a decision to this effect." 13 C.F.R. § 125.30(g)(4) (2016).

75. To date, SBA has failed to explain to Redhorse why it reached different conclusions in 2011 and 2017, regarding Inmon's control over Redhorse, based on a review of the same documents and circumstances, and virtually identical regulations.

***The Need for a Restraining Order and Injunctive Relief***

76. By proceeding with the SBA Protest at all, the SBA is acting in an arbitrary and capricious manner, contrary to established law, and abusing its discretion.

77. The SBA regulations do not provide a party, including the SBA, with the authority to protest the status of a successful offeror on a non-SDVO contract. 13 C.F.R. §§ 125.17(a) – (d) (2016) By protesting Redhorse's SDVOSB status in connection with its Schedule Contract – a non-SDVO contract – the SBA acted contrary to law and regulation and in an arbitrary and capricious manner.

78. The SBA approved Redhorse's corporate ownership and control structure as compliant with the Federal Regulations related to the 8(a) Program in 2011, and it tacitly re-approved that structure during Redhorse's yearly reviews in the 8(a) Program. During all relevant times, the facts and circumstances related to Redhorse's corporate control structure have not materially changed since the 2011 8(a) Program approval.

79. In its response to Redhorse's appeal to OHA, the SBA correctly admits that the 8(a) and SDVOSB Programs are "similar." In fact, the "control" requirements of the two programs are, in many respects, identical. *See supra* Table 1. To reject the same facts and circumstances now, more than five (5) years later, as somehow non-compliant evidences the implementation of inconsistent, random, and arbitrary decisions by the SBA based not on objective or fixed criteria, but on the personal opinion of the decision-maker, in this case the D/GC.

80. Irreparable harm will result if the SBA is permitted to: ignore its regulatory obligation to "aid[ ], counsel[ ], assist[ ], and protect[ ] the interests of small business concerns, and advocate[ ] on their behalf within the Government"; proceed with the SBA Protest; and preclude Redhorse from representing itself as an SDVOSB on its schedule, given the arbitrary and inconsistent nature of the SBA's decisions regarding Redhorse's corporate ownership and control structure and the D/GC's conflict of interest. These factors would prevent Redhorse from obtaining a fair and impartial review of its SDVOSB status even if the SBA protest were otherwise permissible or appropriate, would call into question several dozen SDVOSB task orders Redhorse currently performs for federal agencies, and would jeopardize pending SDVOSB awards and future procurement opportunities. And, removal of Redhorse's eligibility to compete for SDVOSB procurements, which constitute a substantial amount of Redhorse's work, threatens Redhorse's ability to continue as a viable business.

81. In the event that Redhorse is excluded from performance on its current SDVOSB task orders, Redhorse would suffer significant financial loss and great disruption to its business.

82. It would be inequitable and contrary to the interests of justice to permit the SBA to penalize a small business, based on a purported flaw in its corporate ownership and control structure, when that small business acted in reliance on a prior decision of the SBA approving the very same corporate ownership and control structure.

83. It is in the public interest to prevent the Government from initiating arbitrary and capricious protests of SDVOSB status and from proceeding on such protests despite a glaring conflict of interest where a single Government official may act as complainant, trial judge, jury, executioner, and appellate judge all in the same proceeding.

## IV. CAUSES OF ACTION

### COUNT I – ARBITRARY, CAPRICIOUS, ABUSE OF DISCRETION, AND OTHERWISE CONTRARY TO LAW

84. Plaintiff incorporates by reference Paragraphs 1 through 83 of this Complaint as if fully set forth and restated herein.

85. The Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A) (1966), establishes that the district court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

86. On or about December 20, 2011, after an eight (8) month review process, the SBA approved Redhorse's application to enter the 8(a) Program, which necessarily included approval of Redhorse's corporate control structure as compliant with the applicable Federal Regulations.

87. In its response to Redhorse's appeal to OHA, the SBA correctly admits that the 8(a) and SDVOSB Programs are "similar." In fact, the "control" requirements of the two programs are at times identical. *See supra* Table 1.

88. In reliance on the SBA's decision on Redhorse's 8(a) application, Redhorse self-represented as an SDVOSB.

89. During all relevant times, Redhorse's corporate control structure has not materially changed.

90. The SBA regulations do not provide a party, including the SBA, with the authority to protest the status of a successful offeror on a non-SDVO contract. 13 C.F.R. §§ 125.17(a) – (d) (2016). By protesting Redhorse's SDVOSB status in connection with its Schedule Contract – a non-SDVO contract – the SBA acted contrary to law and regulation and in an arbitrary and capricious manner.

91. Despite its own prior approvals of Redhorse's corporate control structure, on or about January 5, 2017, the SBA, through the D/GC, issued a Determination, on an SDVOSB protest filed by a disappointed bidder, that Redhorse did not meet the corporate control requirements to represent as an SDVOSB concern. The Determination was in direct contrast to the SBA's December 2011 decision that Redhorse met the corporate control requirements of the 8(a) Program.

92. After the D/GC's Determination was overturned on appeal to OHA, on or about May 3, 2017, the SBA, again through the D/GC, initiated the SBA Protest despite previously declining to adopt the disappointed bidder's SDVOSB protest.

93. The D/GC was not only the person in charge of filing the SBA Protest, but, if permitted, he will also rule on the pending SBA Protest, creating a conflict of interest and preventing Redhorse from obtaining a fair and impartial review of its SDVOSB status.

94. For the SBA to reject the same facts and circumstances now, more than five (5) years later, as somehow non-compliant evidences the implementation of inconsistent, random, and arbitrary decisions by the SBA based not on objective or fixed criteria, but on the personal opinion of the decision-maker, in this case the D/GC.

95. The SBA's filing of a protest against Redhorse was therefore arbitrary, capricious, an abuse of discretion, and/or contrary to law and defied the spirit of its own government regulations by entertaining a protest where there is no credible evidence that Redhorse's circumstances have materially changed since the SBA certified it.

96. Because Redhorse's corporate control structure did not materially change since it applied to the 8(a) Program and for all relevant time periods thereafter, the SBA was aware of all

facts related to whether Redhorse's corporate control structure was compliant with the applicable federal regulations at the time the SBA approved Redhorse's 8(a) application.

97. The very purpose of the application process for the 8(a) Program is that small business applicants who are approved for the 8(a) Program will rely on the SBA's determination in that regard.

98. The SBA, as the regulatory body governing the 8(a) and SDVOSB Programs, is in the best position to determine whether a small business applicant meets the corporate control structure requirements of the federal regulations governing those programs.

99. To the extent Redhorse's corporate control structure was not compliant with the requirements imposed by the federal regulations and the SBA, Redhorse was ignorant of the same.

100. Redhorse did not conceal, misrepresent, or withhold facts in filing its 8(a) application; Redhorse provided all required and requested information to the SBA during the application process.

101. Redhorse did, in fact, rely on the SBA's decision to approve its 8(a) Program application and took action upon that decision by self-representing as an SDVOSB.

102. The SBA has engaged in misconduct by targeting Redhorse for penalties despite no evidence of misconduct on Redhorse's part; by engaging in conduct that would result in an egregiously unfair result; and by otherwise engaging in affirmative misconduct.

103. Accordingly, the SBA is equitably estopped from proceeding with its protest, rendering a decision thereon, or further challenging Redhorse's SDVOSB status. To permit otherwise would allow the SBA to act contrary to law.

## COUNT II – DECLARATORY JUDGMENT

104. Plaintiffs incorporate by reference Paragraphs 1 through 103 of this Complaint as if fully set forth and restated herein.

105. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (2010), where there exists an "actual controversy" between parties, the district court "may declare the rights and other legal relations" of the party seeking declaratory relief.

106. There exists an actual controversy between Plaintiff and Defendant because Defendant, the U.S. Government agency tasked with regulating small businesses, is seeking to take adverse action, i.e., protest, against Plaintiff's status as a participant in the SDVOSB Program.

107. The Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A) (1966), establishes that the district court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

108. On or about December 20, 2011, after an eight (8) month review process, the SBA approved Redhorse's application to enter the 8(a) Program, which necessarily included approval of Redhorse's corporate control structure as compliant with the applicable Federal Regulations.

109. In its response to Redhorse's appeal to OHA, the SBA correctly admits that the 8(a) and SDVOSB Programs are "similar." In fact, the "control" requirements of the two programs are, in many respects, identical. *See supra* Table 1.

110. In reliance on the SBA's decision on Redhorse's 8(a) application, Redhorse self-represented as an SDVOSB.

111. Redhorse's corporate control structure has not materially changed since it applied to the 8(a) Program.

112. Because Redhorse's corporate control structure has not materially changed since it applied to the 8(a) Program, the SBA was aware of all facts related to whether Redhorse's corporate control structure was compliant with the applicable federal regulations at the time the SBA approved Redhorse's 8(a) application.

113. The very purpose of the application process for the 8(a) Program is that small business applicants who are approved for the 8(a) Program will rely on the SBA's determination in that regard.

114. The SBA, as the regulatory body governing the 8(a) and SDVOSB Programs, is in the best position to determine whether a small business applicant meets the corporate control structure requirements of the federal regulations governing those programs.

115. To the extent Redhorse's corporate control structure was not compliant with the requirements imposed by the federal regulations and the SBA, Redhorse was ignorant of the same.

116. Redhorse did not conceal, misrepresent, or withhold facts in filing its 8(a) application; Redhorse provided all required and requested information to the SBA during the application process.

117. Redhorse did, in fact, rely on the SBA's decision to approve its 8(a) Program application and took action upon that decision by self-representing as an SDVOSB.

118. The SBA has engaged in misconduct by violating 13 C.F.R. § 101.100 (1983) and its obligation to "aid[ ], counsel[ ], assist[ ], and protect[ ] the interests of small business concerns, and advocate[ ] on their behalf within the Government"; by targeting Redhorse for

penalties despite no evidence of misconduct on Redhorse's part; by engaging in conduct that would result in an egregiously unfair result; and by otherwise engaging in affirmative misconduct.

119. In addition, the SBA has engaged in affirmative misconduct by violating its own regulations which require that a status protest be made only in connection with the award of a sole source or set-aside award. *See* 13 C.F.R. §§ 125.17 & 125.28(e) (2016).

120. Accordingly, the SBA is both lawfully prohibited and equitably estopped from proceeding with its protest, rendering a decision thereon, or further challenging Redhorse's SDVOSB status.

121. Redhorse therefore seeks a declaration from this Court that the SBA is equitably estopped from proceeding with its protest, rendering a decision thereon, or further challenging Redhorse's SDVOSB status.

122. In addition, Redhorse seeks a declaration from this court that the SBA acted arbitrarily and capriciously, abused its discretion, or otherwise acted not in compliance with the law by initiating its own protest of Redhorse's SDVOSB status.

## V. DEMAND FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

1) Upon appropriate motion made by Plaintiff, enter a Temporary Restraining Order prohibiting and enjoining Defendant from proceeding with and/or ruling on its own protest of Plaintiff's status as an SDVOSB;
2) Upon appropriate motion made by Plaintiff, enter a Preliminary Injunction against SBA prohibiting and enjoining SBA from proceeding with and/or ruling on its own protest of Plaintiff's status as an SDVOSB;

3) Enter a permanent injunction against SBA prohibiting and enjoining SBA from initiating, proceeding with and/or ruling on its own protest of Plaintiff's status as an SDVOSB;

4) Enter a Declaratory Judgment finding that the SBA initiated an unauthorized protest against Redhorse's GSA Schedule, which was not an SDVOSB sole source or set-aside award.

5) Enter a Declaratory Judgment finding that the SBA is equitably estopped from proceeding with initiating, proceeding with and/or ruling on its own protest of Plaintiff's status as an SDVOSB;

6) Enter a Declaratory Judgment finding that the SBA acted arbitrarily and capriciously, abused its discretion, or otherwise acted not in compliance with the law by initiating its own protest of Redhorse's SDVOSB status; and

7) Order such other and further relief as this Honorable Court deems appropriate in the circumstances.

[REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY]

**VERIFICATION AND OATH**

I, David Inmon, hereby certify that I have read the contents of the foregoing Verified Complaint for Declaratory Judgment, a Temporary Restraining Order, and Injunctive Relief and swear and affirm, under the pains and penalties of perjury that the contents of the foregoing are true and correct based on my own personal knowledge, except as otherwise specifically noted.

June 7, 2017
Date

David Inmon
President and Chief Executive Officer
Redhorse Corporation

Dated: June 7, 2017

Respectfully submitted,

Pamela J. Mazza, Esq. (#398119)
*pmazza@pilieromazza.com*
PilieroMazza, PLLC
888 17th Street, NW, 11th Floor
Washington, D.C. 20006
Ph: (202) 857-1000
Fx: (202) 857-0200

Matthew E. Feinberg, Esq. (#991638)
*mfeinberg@pilieromazza.com*
PilieroMazza, PLLC
888 17th Street, NW, 11th Floor
Washington, D.C. 20006
Ph: (202) 857-1000
Fx: (202) 857-0200

*Attorneys for Plaintiff,*
*Redhorse Corporation*